**NO. 26-1363**

**United States Court of Appeals**
**For the Sixth Circuit**

---

DASSAULT SYSTÈMES, SA

Plaintiff - Appellee

V.

KEITH CHILDRESS

Defendant - Appellant

_______________________________________/

On Appeal from the United States District Court
For the Eastern District of Michigan, Detroit Division
(District Court No. 2:09-cv-10534)

---

# APPELLEE DASSAULT SYSTÈMES' BRIEF

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1(b)(1), Plaintiff-Appellee, Dassault Systèmes, S.A., makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly-owned corporation? No. However, Dassault Systèmes, S.A.is a publicly traded company on the Paris Exchange.

2. Is there a publicly-held corporation, not a party to the appeal, that has a financial interest in the outcome? No.

## TABLE OF CONTENTS


I. STATEMENT OF THE CASE ............................................................1

A. Concise Statement of Relevant Background Facts ..............................1

1. Dassault Received Unsolicited, Anonymous Tip .......................1

2. The FBI's Investigation of Childress and the FBI 302 Reports ........................................................................................2

B. Concise Statement of Relevant Procedural History ............................4

1. From Filing the Complaint In 2009 Until the 2024 Trial ...........4

a. Initiation of the Lawsuit and the Prior Appeals.....................4

b. Issue #1: Judge Leitman's Denial of Childress' Motion to Revisit Judge Battani's 2014 Discovery Order Concerning Privileged Communications..................................................5

2. Trial #2 – March 2024 ..............................................................6

a. Generally..........................................................................6

b. Issue #2: Pennisi's and Taube's Testimony at the 2024 Trial…………………………………………………...7

c. Issue #3: Gus Dimetrelos' Testimony at the 2024 Trial........8

d. Issues 4 and 5: Jury Instructions.........................................10

i. Issue 4: Initial Interest Confusion Instruction......10

ii. Issue 5: Estoppel, Acquiescence and Laches Instructions and Verdict Form ............................12

3. Response to Childress' Version of "The Facts" .......................13

II. SUMMARY OF THE ARGUMENT..........................................................14

III. ARGUMENT.........................................................................................19

A. Issue #1: (1) Childress Waived His Right to Appeal Judge Battani's 2015 Order Denying Childress' Motion to Compel Production of Dassault's Privileged Documents, and/or (2) Judge Leitman Did Not Abuse His Discretion in Applying the Waiver, Forfeiture and Law-of-the-Case Doctrines ................................................................19

1. The Applicable Law and Standard of Review ..........................19

a. Waiver Where a Party Fails to Appeal an Issue ..................19

b. Law-of-the-Case Doctrine .................................................19

2. Childress Waived His Right to Appeal the District Court's 2015 Order Denying His Motion to Compel Production of Dassault's Privileged Documents ....................20
3. Judge Leitman's Application of the Law-of-the-Case Doctrine Was Not an Abuse of Discretion ....................21
4. Childress Does Not Attempt to Demonstrate Any Error in Judge Battani's 2015 Order ....................24

B. Issue #2: (1) Childress and His Attorney Waived the Right to Appeal the Admission of Pennisi's and Taube's Testimony; and/or (2) Childress' Attorney Forfeited the Right to Appeal and Childress Has Not Demonstrated a Plain Error ....................25
1. Childress' Attorney Waived Any Challenge to Pennisi's Testimony Concerning Childress' October 30, 2006 Interview and Childress' December 14, 2006 Proffer Interview ....................25
2. Childress Also Waived Any Challenge to the Admissibility of Pennisi's and Taube's Testimonies By Not Appealing Admissibility of the Same Testimony After the 2017 Trial ....................28
3. Childress Forfeited Any Challenge to Admissibility of Pennisi's and Taube's Testimonies By Not Objecting at the 2024 Trial and Childress Has Not Demonstrated a Plain Error ....................29
4. The Law-of-the-Case Pursuant to This Court's 2014 Opinion Is That Pennisi's Testimony Is Not Precluded by Rule 6(e) ....................31
5. The Government's Privilege Log Does Not Save Childress' Argument ....................32
6. Any Possible Error Was Harmless ....................33

C. Issue #3: (1) Childress Waived His Challenge to Dimitrelos' "Crack" Testimony for "Reliability"; and/or (2) Childress Forfeited the Right to Appeal and Has Not Demonstrated a Plain Error ....................34
1. Childress Waived His Challenge to Dimitrelos' "Crack" Testimony on the Basis of "Reliability" By Not Appealing Admissibility of the Same Testimony Following the 2017 Trial ....................34
2. Childress Forfeited His "Reliability" Argument Concerning Dimitrelos' "Crack" Testimony ....................35
a. Childress Did Not Object to Dimitrelos' Testimony at the 2024 Trial ....................35

b. Childress Did Not Preserve His Objection Via His Pre-Trial Motion *In Limine* ....................35

c. Childress Has Not Demonstrated Admission of Dimitrelos' "Crack" Testimony Was a Plain Error ....................38

d. Any Error Was Harmless Because Childress Admitted He Used a Cracked Copy of CATIA and Haller and Pennisi Corroborated Childress' Admission ....................39

D. Issue #4: The District Court's Initial Interest Confusion Jury Instruction Was Not a Plain Error ....................42

1. Standard of Review ....................42

2. Judge Leitman's Adoption of The Initial Interest Instruction Was Not Plain Error ....................42

3. Any Possible Error Was Harmless ....................45

E. Issue #5: The District Court's Jury Instructions Concerning Childress' Estoppel, Acquiescence, and Laches Defenses Were Not Plain Error ....................47

1. Standard of Review Concerning Jury Instructions ....................47

2. The Absence of an Estoppel Jury Instruction Was Not Plain Error ....................48

3. The Flow of the Jury Verdict Form Directed to Childress' Acquiescence and Laches Defenses Was Not a Plain Error ....................49

4. Childress' Other Arguments ....................55

IV. CONCLUSION ....................56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alsobrook v. UPS Ground Freight, Inc.*,
352 Fed.Appx. 1 (6th Cir. 2009)....................................................................46

*Armstrong v. City of Melvindale*,
432 F.3d 695 (6th Cir. 2006) ........................................................................38

*Barner v. Pilkington N. Am., Inc.*,
399 F.3d 745 (6th Cir. 2005) ........................................................................37

*Bonner Farms, Ltd. V. Fritz*,
355 F.App'x 10 (6th Cir. 2009) .....................................................................53

*Dassault Systemes, SA v. Childress*,
663 F.3d 832 (6th Cir. 2011) ....................................................................*passim*

*Dassault Systemes, SA v. Childress*,
828 Fed.Appx 229 (6th Cir. 2020)...........................................................*passim*

*Dassault Systemes, SA v. Childress*,
Case No. 13-2414, Doc. 33-1 (6th Cir. April 18, 2014).......................................4

*Daycab C. v. Prairie Tech., LLC*,
67 F.4th 837 (6th Cir. 2023) ..........................................................................53

*E.E.O.C. v. New Breed Logistics*,
783 F.3d 1057 (6th Cir. 2015) .......................................................................49

*Ermold v. Davis*,
130 F.4th 553 (6th Cir. 2025) ...................................................................19, 20

*In Re Grand Jury Matter*,
682 F.2d 61 (3rd Cir. 1982) ...........................................................................30

*House v. Player's Dugout, Inc.,*
2024 U.S. App. LEXIS 3181 (6th Cir. February 8, 2024) .................................45

*Hyson USA, Inc. v. Hyson 2U, Ltd.*,
821 F.3d 935 (7th Cir. 2016) ........................................................................52

*JGR, Inc. v. Thomasville Furniture Indus.*,
550 F.3d 529 (6th Cir. 2008) ....................19, 20, 28

*Johnson v. Ford Motor Co.*,
2025 U.S. App. LEXIS 8615 (6th Cir. 2025) ....................19, 20, 28

*Ky. Indus. Hemp, LLC v. Teterboro Partners, LLC*,
2024 U.S. App.LEXIS 13846 (6th Cir. June 5, 2024) ....................*passim*

*Luna v. Bell*,
887 F.3d 290 (6th Cir. 2018) ....................23, 24

*Moody v. Mich. Gaming Control Bd.*,
871 F.3d 420 (6th Cir. 2017) ....................32

*Munson Hardisty, LLC v. Legacy Point Apts., LLC*,
2025 U.S. App.LEXIS 7341 (6th Cir. March 28, 2025) ....................42, 47, 48, 50

*Nartron Corp. v. STMicroelectronics, Inc.*,
305 F.3d 397 (6th Cir. 2002) ....................51

*Paccar Incorporated v. Telescan Technologies*,
319 F.3d 243 (6th Cir. 2003) ....................42, 44, 45

*Ross v. Parrot's Landings, Inc.*,
2022 U.S. App.LEXIS 28588 (6th Cir. October 13, 2022) ....................55

*Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan*,
300 F.3d 711 (6th Cir. 2002) ....................20

*Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*,
908 F.3d 313 (8th Cir. 2018) ....................52

*United States v. Aaron*,
590 F.3d 405 (6th Cir. 2009) ....................42, 47, 50

*United States v. Calhoun*,
480 Fed. Appx. 353 (6th Cir. 2012) ....................35

*United States v. Fugate*,
2000 U.S. App. LEXIS 22654 (6th Cir. August 30, 2000) ....................34, 41

*United States v. Logan*,
542 Fed. Appx. 484 (6th Cir. 2013)............................................................34, 41

*United States v. Phillips*,
872 F.3d 803 (6th Cir. 2017) .........................................................................55

*United States v. Sedore*,
512 F.3d 819 (6th Cir. 2008) ..................................................................19, 20, 28

*United States v. Xiaorong You*,
74 F.4th 378 (6th Cir. 2023) .....................................................................29, 38

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................5

Fed. R. Crim. P. 6(e) ..........................................................................*passim*

Fed. R. Ev. 103(a)(1) ...................................................................................29, 35

Fed. R. Ev. 103(a)(1); and (ii)...........................................................................16

Rule 26 ............................................................................................................38

Rule 50(b)....................................................................................................7, 43

Rule 51 ............................................................................................................49

Rule 702 ..........................................................................................................35

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee Dassault Systèmes, S.A. requests oral argument because the record on appeal is large and the procedural history is complicated. The panel would benefit from the opportunity to ask questions of counsel.

## STATEMENT OF THE ISSUES

1. Should the jury verdict be vacated and the case be remanded for the district court to review Judge Battani's 2015 discovery Order denying Childress' motion to compel production of Dassault's privileged communications, where:

   (i) Childress waived any challenge to Judge Battani's Order; and/or

   (ii) Childress has not demonstrated Judge Leitman abused his discretion in the application of the waiver, forfeiture and law-of-the-case doctrines; and/or

   (iii) Childress has not demonstrated any defect in Judge Battani's 2015 Order.

**Dassault's Answer: <u>No</u>.**

2. Should the jury verdict on copyright infringement be vacated and the case remanded for a third trial in view of Judge Leitman's admission of the testimonies of Special Agents Pennisi and Taube, where:

   (i) Childress waived any challenge to the admission of Pennisi's and Taube's testimonies multiple times; and/or

   (ii) Childress forfeited any challenge to Pennisi's and Taube's testimonies by not lodging an objection during the 2024 trial and Childress has not demonstrated plain error, and/or

   (iii) the law-of-the-case from this Court's 2014 Opinion established that Pennisi's FBI 302 Reports are not protected by Fed. R. Çrim. P. 6(e)?

**Dassault's Answer: <u>No</u>.**

3. Should the jury verdict on copyright infringement via Childress' use of a "crack" be vacated and that issue be remanded for a third trial in view of the admission of the testimony of Dassault's computer forensics expert, Gus Dimitrelos, concerning the existence of a "cracked" copy of CATIA on Childress' computer, where:

   (i) Childress waived any challenge to the admission of Dimitrelos' testimony, and/or

   (ii) Childress' attorney forfeited any challenge to Dimitrelos' testimony by not lodging an objection during the 2024 trial and Childress has not demonstrated a plain error?

**Dassault's Answer: <u>No</u>.**

4. Should the jury verdict on trademark infringement be vacated and the trademark portion of the case by remanded for a third trial because the jury instructions included an "initial-interest-confusion" instruction, where:

   (i) Childress does not dispute the legal accuracy of the instruction;

   (ii) Childress' attorney did not object to the instruction, despite three invitations to do so; and

   (iii) Childress has not demonstrated plain error at least because (a) Childress' foundational contention that this Court's 2020 opinion precludes an initial-interest-confusion instruction is fundamentally wrong, and/or (b) any possible error (there was none) was harmless in any event?

**Dassault's Answer: <u>No</u>.**

5. Should the trademark portion of the case be remanded for a third trial to resolve unidentified factual issues concerning Childress' estoppel, acquiescence and laches in view of the fact that the jury instructions did not include an estoppel instruction and the flow of the verdict form directed the jury to skip the questions directed to Childress' acquiescence and laches defenses, where:

    (i) Childress' attorney participated in the crafting of the instructions and verdict form;

    (ii) Childress' attorney did not object to the absence of an estoppel instruction, to the substance of the acquiescence and/or laches instructions, or to the flow of the verdict form; and

    (iii) Childress has not demonstrated plain error at least because (a) Childress' attorney abandoned the estoppel defense; (b) Childress' laches defense is moot in view of Dassault's abandonment of its claim for monetary damages for trademark infringement; (c) acquiescence is an equitable defense where the ultimate decision is reserved for the judge, not the jury, and there were no underlying factual issues to resolve; and (d) Childress received a full and fair opportunity to present his acquiescence defense to Judge Leitman?

**Dassault's Answer: <u>No</u>.**

# I. STATEMENT OF THE CASE

## A. Concise Statement of Relevant Background Facts

### 1. Dassault Received Unsolicited, Anonymous Tip

Appellee Dassault Systèmes, SA ("Dassault") owns copyrights in its 3-dimensional computer aided design ("CAD") software package called CATIA, which is used throughout the world by a wide range of customers, including major manufacturers of automobiles and aircraft. Transcript, R.714, PageID.27195-27196. In January 2005, Dassault received an unsolicited, anonymous tip that Appellant Keith Childress, who operated a for-profit CATIA training business in Michigan called Practical Catia Training, was purportedly using unlicensed copies of CATIA to teach his classes. *Id.*, PageID.27233-27235. Dassault's internal investigation did not uncover any CATIA licenses to Childress, either under his own name or the name of his business. *Id.*, PageID.27236-237. Rodolphe Pantanacce, Dassault's internal intellectual property attorney, and Andrew Clarkson, Dassault's Director of License Compliance, were the two Dassault employees responsible for handling the Childress matter for Dassault. But with essentially no investigative resources in the United States at the time, Dassault turned the case over to the FBI in mid-2005. *Id.*, PageID.27239.

### 2. The FBI's Investigation of Childress and the FBI 302 Reports

On October 27, 2006, the Federal Court for the Eastern District of Michigan issued a search warrant to Special Agent Pennisi authorizing the FBI to seize computers and documents from Childress' place of business. Exhibit to Petition for Investigation, R.112, PageID.1507-1508. On the same day, AUSA Sheldon Light issued grand jury subpoenas addressed to Childress and his business compelling production of "document(s)" and "object(s)." *Id.*, PageID.1501-1506. AUSA Light never issued a grand jury subpoena for testimony from Childress.

The FBI executed the search warrant on October 30, 2006. Transcript, R.724, PageID.28756-28757. While other FBI agents collected Childress' computers and documents, Pennisi interviewed Childress. *Id.*, PageID.28758; *Id.*, PageID.28773. Childress' interview was voluntary. *Id.*, PageID.28775; PageID.28787.

During the interview, Childress admitted to (i) cloning the computer running his one purchased CATIA license (which, unbeknownst to Dassault, Childress had purchased under the pseudonym G. Bailey & Associates) to other computers to teach his classes (Transcript, R.724, PageID.28776-28778)[1], and (ii) using a "cracked" copy of CATIA that he purchased from someone in Lithuania (a different way of using an unlicensed and illegal copy of software) on one of the computers (*Id.*,

---

[1] This enabled Childress to Circumvent CATIA's license verification mechanism and use his one CATIA license on 17 other computers without paying the requisite license fee for each computer.

PageID.28776). Childress also admitted that he knew what he had done was wrong. *Id.*, PageID.28778-28779. After answering Pennisi's questions for a while, Childress asked for a lawyer and unilaterally terminated the interview. *Id.*, PageID.28781. Only then, after Childress had terminated the interview, did Pennisi serve Childress with the grand jury subpoenas for production of documents. Exh. to Resp. to Motion *in limine,* R.628-1, PageID.24093. The next day, Pennisi had a transcription of his interview generated, which resulted in the 4-page FBI 302 Report dated October 31, 2005. Transcript, R.724, PageID.28759-28760; 302 Report, R.628-1, PageID.24090-24093. FBI Special Agent Taube was present at and witnessed Pennisi's interview of Childress (Transcript, R.724, PageID.28773), and Taube verified and initialed the October 31, 2006 FBI 302 Report. 302 Report*,* R.628-1, PageID.24090.

On December 14, 2006, Childress, accompanied by his attorney, voluntarily gave a proffer interview to AUSA Light and Pennisi, wherein Childress provided substantially the same information as he did in his October 30, 2006 interview. Transcript, R.724, PageID.28787. Pennisi generated an FBI 302 Report summarizing Childress' December 14, 2006 proffer interview. *Id.*, at PageID.28782-28783.

### B. Concise Statement of Relevant Procedural History

#### 1. From Filing the Complaint In 2009 Until the 2024 Trial

##### a. Initiation of the Lawsuit and the Prior Appeals

On February 12, 2009, Dassault sued Childress for copyright infringement of its CATIA software and for trademark infringement for Childress' use of Dassault's CATIA trademark within the name of his business, "Practical Catia Training," and his website URL "practicalcatia.com." Complaint, R.1, PageID.1. Childress filed 11 counterclaims against Dassault. Answer, R.101-1, PageID.1249-1266.

This case has had a long and complicated history over the last 17 years. There have been 786 docket entries in the district court, 3 district court judges (Judge Zatkoff 2009-2015; Judge Battani 2015-2019, and Judge Leitman from 2020-present), and 2 full jury trials (first trial in March 2017 and second trial in March 2024). This appeal is the fourth time this Court has seen this case. The first time this Court reversed Judge Zatkoff's default judgment against Childress. *Dassault Systemes, SA v. Childress*, 663 F.3d 832 (6th Cir. 2011). The second time this Court affirmed Judge Zatkoff's denial of Childress' motion to quash a subpoena to the FBI seeking the FBI's notes relating to the Childress investigation, wherein this Court found that Fed. R. Crim. P. 6(e) ("grand jury secrecy") did not apply to Pennisi's FBI 302 Reports. *Dassault Systemes, SA v. Childress*, Case No. 13-2414, Doc. 33-1 (6th Cir. April 18, 2014). The third time this Court vacated a jury verdict of copyright infringement (but no trademark infringement) because the jury received extraneous

information during the trial. *Dassault Systemes, SA v. Childress*, 828 Fed.Appx 229 (6th Cir. 2020). In the same Opinion, this Court also partially overturned Judge Zatkoff's December 2014 Order and Judge Batanni's November 2015 Order – which collectively had dismissed all 11 of Childress' counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) – to reinstate Childress' abuse of process and tortious interference counterclaims (leaving the other 9 counterclaims dismissed). *Id.* The case was remanded to the district court (Judge Leitman) in 2020. *Id.*

**b. <u>Issue #1</u>: Judge Leitman's Denial of Childress' Motion to Revisit Judge Battani's 2014 Discovery Order Concerning Privileged Communications**

After remand in 2020, the parties engaged in extensive motion practice, which included Childress' motion to revisit Judge Batanni's 2015 Order denying Childress' 2014 motion to compel Dassault to produce its privileged Pantanacce/Clarkson communications. R.550, PageID.16843-16849. Nearly seven years earlier, in June 2014, Dassault had served its privilege log, on which Dassault identified Pantanacce/Clarkson communications and other documents that Dassault withheld from production under the attorney-client privilege and/or the work product doctrine. Privilege Log, R.256-4, PageID.5199-5206. In his 2014 motion to compel (R.250, PageID.5112-5128), Childress argued the attorney-client privilege and work product doctrine do not apply to the Pantanacce/Clarkson communications, and that, even if they do, Dassault had allegedly waived the privilege/protection. *Id.*, at

PageID.5112-5114; see also, R.262, PageID.5277 ("Since Clarkson was not a DS employee when these documents were generated, DS cannot claim attorney-client privilege."). Following oral argument (R.295, PageID.8158-8160), Judge Battani issued an Order on August 27, 2015 denying Childress' motion. R.300, PageID.8247 (items h, i, and j). Childress did not appeal Judge Battani's Order following the 2017 trial. *Dassault*, 828 Fed.Appx 229.

Accordingly, Judge Leitman denied Childress' motion to revisit Judge Battani's 2015 Order pursuant to the doctrines of waiver, forfeiture and law-of-the-case. Transcript, R.558, PageID.17183-17184; Order, R.557, PageID.17145-17146. When Childress re-raised the same motion in the middle of the 2024 trial, Judge Leitman denied it again for the same reasons. Transcript, R.725, PageID.28874-28875. Further, Judge Leitman dismissed Childress' tortious interference counterclaim on summary judgment. Order, R.597, PageID.22200.

**2. Trial #2 – March 2024**

**a. Generally**

The parties conducted the second jury trial in March 2024, wherein Dassault's copyright infringement and trademark infringement claims and Childress' abuse of process counterclaim were tried. The jury returned a verdict that (i) Childress infringed Dassault's copyrights both by (a) cloning Childress' one legitimate CATIA license to 17 other computers, and (b) using a "cracked" copy of CATIA on one

computer; (ii) Childress' copyright infringement was willful; (iii) Childress infringed Dassault's CATIA trademark, but that the trademark infringement was excused because the jury found Childress' use qualified as "fair use"; and (iv) Dassault had not committed abuse of process. Verdict Form, R.667, PageID25043-25049. Judge Leitman granted Dassault's post-trial Rule 50(b) motion for judgment as a matter of law, overturning the jury's "fair use" finding because Childress' use of CATIA within the name of his for-profit business and in his website URL were not uses "other than as a trademark," as required to be a "fair use." Transcript, R.728, PageID.29174-29176.

**b. <u>Issue #2</u>: Pennisi's and Taube's Testimony at the 2024 Trial**

Pennisi testified at the 2024 trial about what Childress had said during his October 30, 2006 and December 14, 2006 interviews. Transcript, R.724, PageID.28773-28782; *Id.*, PageID.28782-28787. Pennisi testified that Childress admitted to cloning the computer running the one legitimate CATIA license to his other computers. Transcript, R.724, PageID.28777-28779. Pennisi testified that Childress admitted to knowing what he had done was wrong. *Id.* Pennisi testified that, after making the admissions, Childress asked for an attorney and terminated the interview. *Id.*, PageID.28781. Pennisi also described the content of Childress' December 14, 2006 proffer interview, which was also voluntary (*Id.*,

PageID.28786), as being substantially the same as in his October 30, 2006 interview. *Id.*, PageID.28787.

The FBI 302 Reports summarizing the October 30, 2006 and December 14, 2006 interviews were marked for identification as Exhibits 25A and 25B, respectively, at the 2024 trial. <u>But neither FBI 302 Report was admitted into evidence or shown to the jury</u>. *Id.*, PageID.28771, lines 3-7; *Id.*, PageID.28788, lines 3-9. Instead, Pennisi relied on his FBI 302 Reports to refresh his recollection during his oral testimony. See, e.g., *Id.*, PageID.28771, lines 3-7; *Id.*, PageID.28773, lines 21-24.

Childress' attorney expressly and unequivocally agreed that Pennisi could testify about Childress' interviews, provided the FBI 302 reports themselves were not admitted as exhibits. Transcript, R.724, PageID.28766-28767; See also, *Id.*, PageID.28841. Further, at the insistence of Childress' attorney and over the caution of Judge Leitman (*Id.*, PageID.28842-28844), Taube's full *de benne esse* deposition testimony—which in part included a reading of Pennisi's FBI 302 Report summarizing Childress' October 30, 2006 interview—was played for the jury. *Id.,* PageID.28846.

**c. <u>Issue #3</u>: Gus Dimetrelos' Testimony at the 2024 Trial**

Gus Dimitrelos, Dassault's computer forensic expert, also testified at both the 2017 trial and the 2024 trial on two topics, namely that his forensic evaluation of

Childress' computers demonstrated: (i) Childress had cloned the one legitimate CATIA license to 17 student computers; and (ii) Childress used a "cracked" (illegal) copy of CATIA on one of his computers (which was a separate and distinct copyright infringement violation). Transcript, R.473, PageID.14307-14314 (2017 trial); Transcript, R.725, PageID.28912-28918 (2024 trial). Dimitrelos' testimony was the same in both trials. Compare, *Id.* Childress admits as much. Appellant's Brief, Doc. 11, p. 55.

Dimitrelos found the "crack" file on Childress' computer shortly before the March 2017 trial while preparing to testify about Childress' cloning of the one CATIA license. Transcript, R.473, PageID.14322-14323. Childress did not object to the "reliability" of Dimitrelos' "crack" testimony in the 2017 trial. Transcript, R.473, PageID.14308. Childress only objected to Dimitrelos' "crack" testimony in the 2017 trial because it had not been disclosed in Dimitrelos' 2013 expert report (more than 3 years before Dimitrelos found the "crack"). *Id*. Judge Battani overruled Childress' objection. *Id.*, PageID.14308; *Id.*, PageID.14338-14340. Childress did not challenge Judge Battani's admission of Dimitrelos' "crack" testimony in his appeal following the 2017 trial on any basis, let alone the "reliability" challenge he offers now in this appeal. *Dassault*, 828 Fed.Appx. 229.

Prior to the 2024 trial, Childress filed a motion *in limine* to exclude Dimitrelos' testimony on two bases: (i) Dimitrelos purportedly "does not possess the

requisite expertise" to testify about Childress' cloning of his one legitimate CATIA license because Dimitrelos is admittedly not an expert in the CATIA software or in Dassault's LUM licensing mechanism (the first prong of a *Daubert/*FRE 701 challenge) (Childress' Motion *in limine*, R.622, PageID.23283-23286); and (ii) Dimitrelos' disclosure of his "crack" testimony was purportedly untimely (*Id.*, PageID.23287-23290), which was the same objection Childress raised during the 2017 trial. Childress did <u>not</u> challenge Dimitrelos' testimony in his motion *in limine* – <u>on either of Dimitrelos' testimony topics</u> – for any purported "unreliability" in Dimitrelos' methodology (the second prong of a *Daubert*/FRE 702 challenge), which Childress advances now in this appeal. *Id.* Judge Leitman denied Childress' motion *in limine*, finding (i) Dimitrelos is a qualified expert in computer forensics, and (ii) Dimitrelos' anticipated "crack" testimony was timely disclosed pursuant to Judge Leitman's schedule for the 2024 trial. Transcript, R.713, PageID.27051.

#### d. <u>Issues 4 and 5</u>: Jury Instructions

##### i. <u>Issue 4</u>: Initial Interest Confusion Instruction

The parties' attorneys collaborated for several hours with Judge Leitman to craft the proposed jury instructions. R.716, PageID.27506. One of the proposed jury instructions related to Dassault's trademark infringement claim and was specifically directed to the theory of "initial interest confusion," which was proposed as follows:

> One type of confusion Dassault is alleging is initial interest confusion. Initial interest confusion occurs when a

> consumer is lured to a product, service and/or website by its similarity to a known mark, even if the consumer later realizes the true identity and origin of the product, service or website.
>
> In some instances, initial confusion may be immediately dissipated without any harm if the product, service or website sufficiently clarifies that it is not affiliated with the trademark owner.

Transcript, R.707, PageID.26819 (the "Initial Interest Confusion Instruction").

Judge Leitman held a dedicated session to provide both parties' attorneys a full opportunity to lodge objections to the proposed jury instructions on the record.[2] Transcript, R.716, PageID.27505-27556. Judge Leitman invited the parties' attorneys twice more to object to the jury instructions during and following the jury charge. Transcript, R.707, PageID.26865-26866; *Id.*, PageID.26922-26923. Childress' attorney made no objection to the Initial Interest Confusion Instruction at any time. Transcript, R.716, PageID.27526-27556; Transcript, R.707, PageID.26865-26866; *Id.*, PageID.26922-26923. Childress now asserts that it was plain error for Judge Leitman to include any Initial Interest Confusion Instruction at all.

---

[2] Childress chose not to attend this session, but he instead left the resolution of and objections to the proposed jury instructions to his attorneys. Transcript, R.716, PageID.27502—PageID.27503.

### ii. Issue 5: Estoppel, Acquiescence and Laches Instructions and Verdict Form

Childress also alleges the absence of an instruction in the jury charge for Childress' estoppel defense was reversible error. But Childress' attorney did not object to the absence of an estoppel jury instruction, despite the three separate invitations from Judge Leitman to do so. Transcript, R.716, PageID.27526, line 8—PageID.27556, line 9; Transcript, R.707, PageID.26865, lines 20-25; *Id.*, PageID.26922, line 20—PageID.26923, line 2. Nor did Childress' attorney raise the absence of an estoppel instruction in any post-trial motions. Order, R.754, PageID.32986. Childress' attorneys' choice not to object is consistent with the fact that he did not mention "estoppel" (or any derivative) a single time during his presentation of evidence or during his opening statement or closing argument. Transcript, R.707, PageID.26867-26894.

Finally, Childress asserts it was reversible error for the verdict form to instruct the jury to "skip" answering the questions directed to Childress' acquiescence and laches defenses if the jury found Childress' use of Dassault's CATIA trademark was "fair use." Like with the jury instructions, the parties' attorneys and Judge Leitman collaborated to generate the verdict form. Transcript, R.707, PageID.26720, lines 20-25. Thereafter, Judge Leitman invited the parties' attorneys to object to the draft verdict form. *Id.*, PageID.26721, line 1—PageID.26724, line 25. Childress' attorney

did not object to the flow of the verdict form directed to Childress' acquiescence and laches defenses. *Id.*, PageID.26722-26724.

### 3. Response to Childress' Version of "The Facts"

Childress narrates his view of the events of this case (Doc. 11, pp.3-26), describing "facts" that are often incorrect, misleading, and/or irrelevant. Dassault disputes Childress' version of the facts, which the jury also rejected.

Childress also conflates the relevant time-period of his infringement, describing his students' use of a demo "hobbled code" version of CATIA and temporary licenses to take his class. But significantly, those events pre-date the acts of Childress' copyright infringement. What those events demonstrate, however, is Childress' long history of providing CATIA training without paying for licenses on his 17 classroom computers. When Dassault/IBM cracked down on improper distribution and use of "hobbled code" versions and temporary licenses for CATIA, Childress took matters into his own hands and implemented a technical "workaround" to circumvent Dassault's license verification mechanism to avoid paying license fees for his classroom computers. It is that act that formed the basis of Dassault's copyright infringement claim and the jury verdict.

## II. SUMMARY OF THE ARGUMENT

Childress' appeal should be denied on all issues and the Final Judgement (R.777, PageID.35030-35031) affirmed for the following reasons.

**Issue #1 – Privileged Pantanacce/Clarkson Communications**

Childress waived his right to challenge in this appeal the issue of Dassault's privileged Pantanacce/Clarkson communications. Judge Batanni's 2015 Order denied Childress' motion to compel production of the same privileged documents that are the subject of this appeal. But Childress did not appeal Judge Batanni's 2015 Order following the 2017 trial. Therefore, Childress was barred from raising the same issue before Judge Leitman after the remand and is similarly barred from raising it before this Court now. That should end this Court's inquiry on this issue.

The same result is reached under a law-of-the-case analysis. Childress has not demonstrated Judge Leitman abused his discretion in declining to revisit Judge Batanni's 2015 Order denying Childress' motion to compel. Privilege squarely applies, and Childress makes no attempt to demonstrate otherwise.

**Issue #2 – Pennisi and Taube Testimony**

Childress and his attorney waived his right to challenge the admission of Pennisi's and Taube's testimonies before this Court on appeal. Childress' attorney expressly and unequivocally agreed to the admission of Pennisi's and Taube's testimony concerning Childress' October 30, 2006 and December 14, 2006

interviews. That should end this Court's inquiry on this issue. In addition, though, Childress waived his right to appeal this issue now by not appealing the admission of Pennisi's same testimony and the FBI 302 Report itself following the 2017 trial. That was a second waiver and a second reason this Court should stop its inquiry here.

The same result is reached under a forfeiture analysis. Childress' attorney did not object to the admission of Pennisi's and Taube's testimony in the 2024 trial, thereby triggering "plain error" review. Childress has not demonstrated Judge Leitman's admission of Pennisi's and Taube's testimonies was a plain error.

Finally, this court already addressed this issue its 2014 Order, affirming Judge Zatkoff's denial of Childress' motion to quash Dassault's subpoena to the FBI and holding that Fed. R. Crim. P. 6(e) does not prevent the disclosure of Pennisi's FBI 302 Reports. In addition to Childress' and his attorneys' waivers and forfeitures, there is no reason for this Court to revisit the same issue it already addressed in its 2014 Opinion.

**Issue #3 – Dimitrelos Testimony**

Childress waived any right to challenge the admissibility of Dimitrelos' "crack" testimony. Dimitrelos gave the same "crack" testimony in the 2017 trial as he gave in the 2024 trial. But Childress did not appeal the admissibility of Dimitrelos' "crack" testimony following the 2017 trial, which results in a bar to

Childress raising the issue in this appeal. This Court's inquiry on this issue should stop here.

The same result is reached under a forfeiture analysis. Childress' attorney did not object to Dimitrelos' "crack" testimony at the 2024 trial, triggering a "plain error" review. Childress' reliance on his motion *in limine* as a purported preservation of the issue for appeal fails for two reasons: (i) a motion *in limine* is insufficient to preserve an evidentiary objection that the party fails to make at trial under Fed. R. Ev. 103(a)(1); and (ii) Childress did not, in fact, challenge the "reliability" of Dimitrelos' "crack" testimony in his motion *in limine*. Childress has not demonstrated Judge Leitman's admission of Dimitrelos' testimony was a plain error.

Finally, any possible error (there was none) was harmless. Childress admitted to using a "cracked" copy of CATIA, which was corroborated by the testimonies of Nathan Haller and Pennisi. Thus, other substantial evidence supported the jury verdict on the "crack."

**Issue #4 – "Initial Interest Confusion" Jury Instruction**

Childress' attorney collaborated with Dassault's attorney and Judge Leitman for several hours to craft the jury instructions. Childress' attorney did not object to the initial interest confusion jury instruction, notwithstanding Judge Leitman's invitation to do so three separate times. Therefore, Childress forfeited any objection to the initial interest confusion jury instruction. Childress has not attempted to

demonstrate that inclusion of such instruction was a plain error. Childress' interpretation of this Court's 2020 Opinion as precluding an initial interest confusion theory after remand is fundamentally wrong.

Any possible error (there was none) would be harmless. Dassault's attorney did not mention initial interest confusion as a theory in his closing argument (or throughout the case). Childress has not even attempted to demonstrate the jury's verdict would have been different had the initial interest confusion instruction not been included.

**Issue #5 – No Estoppel Jury Instruction and Flow of the Verdict Form**

The parties' attorneys and Judge Leitman spent hours crafting the jury instructions and the verdict form. Childress' attorney did not object to the lack of an estoppel instruction or the acquiescence and laches instructions or the flow of the verdict form directed to Childress' acquiescence and laches defenses. Therefore, Childress' attorney failed to preserve these objections for appeal, triggering a "plain error" review.

Childress has not demonstrated the absence of an estoppel jury instruction was a plain error because Childress' attorney abandoned the estoppel defense. Aside from not objecting to the lack of an estoppel instruction, despite three invitations to do so, Childress' attorney did not mention estoppel in his closing argument or at any

other time during the case. Nor did he raise this issue in any post-trial motions. Therefore, the absence of an estoppel instruction was not a plain error.

Childress' criticism of the flow of the verdict form directing the jury to "skip" Childress' acquiescence and laches defenses if the jury found "fair use" is irrelevant. Dassault's waived its claim for monetary damages, making Childress' laches defense moot. Acquiescence (as is laches) is an equitable defense reserved for decision by the Court, not the jury, which is precisely what occurred. Even if the jury had answered the questions on the verdict form concerning acquiescence and laches, the decision was ultimately for the Court to make on both defenses. Childress' claim that the jury should have resolved "factual issues" fails because (i) the verdict form did not ask the jury to resolve factual issues, but instead only asked for a finding on the ultimate issue, which was reserved for the judge; (ii) Childress has not identified any factual issues the jury should have decided, and (iii) Judge Leitman thoroughly assessed the evidence as Childress presented it, finding that there was no meaningful disputes as to the underlying evidence. In the end, Childress had a full and fair opportunity to present his acquiescence defense to Judge Leitman, who examined the evidence in painstaking detail and wrote an extremely thorough 24-page Opinion finding that Childress' evidence did not support Childress' acquiescence defense. There was no plain error.

## III. ARGUMENT

### A. Issue #1: (1) Childress Waived His Right to Appeal Judge Battani's 2015 Order Denying Childress' Motion to Compel Production of Dassault's Privileged Documents, and/or (2) Judge Leitman Did Not Abuse His Discretion in Applying the Waiver, Forfeiture and Law-of-the-Case Doctrines

#### 1. The Applicable Law and Standard of Review

##### a. Waiver Where a Party Fails to Appeal an Issue

A party who fails to appeal an issue waives his right to raise the issue before the district court on remand or before this court in a subsequent appeal. *United States v. Sedore,* 512 F.3d 819, 827 (6th Cir. 2008) ("'[W]hen a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals during the case.'") (quoting *United States v. McKinley*, 227 F.3d 718, 718 (6th Cir. 2008); *JGR, Inc. v. Thomasville Furniture Indus.*, 550 F.3d 529, 532 (6th Cir. 2008); *Johnson v. Ford Motor Co.*, 2025 U.S. App. LEXIS 8615, *14 (6th Cir. 2025).

##### b. Law-of-the-Case Doctrine

The law-of-the-case doctrine provides that a district court *should not* reconsider a legal issue it resolved at a prior stage of the same case. *Ermold v. Davis*, 130 F.4th 553, 559 (6th Cir. 2025) ("Under the law-of-the-case doctrine, a court 'should not reconsider' a legal issue it 'resolved' at a prior stage of the same case."), citing *Howe v. City of Akron,* 801 F.3d 718, 739 (6th Cir. 2015).

Only in "exceptional circumstances" may a district court reconsider a legal issue that it decided earlier in the case, namely where: (i) there is substantially different evidence, (ii) a subsequent contrary view of the law is decided by the controlling authority, or (iii) a prior decision is "clearly erroneous and would work manifest injustice." *Ermold*, 130 F.4th at 559.

This Court reviews a district court's application of the law-of-the-case doctrine under the abuse of discretion standard. *Rouse v. DaimlerChrysler Corp. UAW Non-Contributory Plan*, 300 F.3d 711, 715 (6th Cir. 2002).

### 2. Childress Waived His Right to Appeal the District Court's 2015 Order Denying His Motion to Compel Production of Dassault's Privileged Documents

Childress waived his right to challenge – both in the district court after the remand and now on appeal – Judge Battani's 2015 Order denying Childress' motion to compel production of the privileged Pantanacce/Clarkson communications because he did not appeal Judge Battani's 2015 Order (R.300, PageID.8247 (items h, i and j)) following the 2017 trial, which covered the same issue Childress now raises in the present appeal. *Sedore*, 512 F.3d at 827; *JGR*, 550 F.3d at 532; *Johnson*, 2025 U.S. App. LEXIS 8615, at *14. The consequence of Childress' waiver is that this Court "<u>will not consider the waived argument on appeal, regardless of any unique circumstance</u>." *Ky. Indus. Hemp, LLC v. Teterboro Partners, LLC,* 2024 U.S. App.LEXIS 13846, *6 (6th Cir. June 5, 2024), citing *Bannister v. Knox Cnty.Bd. of*

*Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). Judge Leitman was correct to decline to revisit Judge Battani's 2015 Order under the waiver doctrine. *Id.* This Court must do the same. That should end this Court's review of this issue.

### 3. Judge Leitman's Application of the Law-of-the-Case Doctrine Was Not an Abuse of Discretion

While Childress' waiver is an absolute bar to Childress' challenge to Judge Battani's 2015 Order, the same result is reached under the law-of-the-case doctrine. After remand, Childress twice filed motions urging Judge Leitman to revisit Judge Battani's 2015 ruling on Dassault's privileged documents, the first time in 2021 (Childress' motion to reopen discovery, R.550, PageID.16843-16849), and the second during the middle of the 2024 trial (Transcript, R.725, PageID.28871-28877; Brief, R.655, PageID.24810-24816). Judge Leitman denied Childress' first motion in view of Childress' forfeiture/waiver and the law-of-the-case doctrines:

> First, I do think there's merit to Dassault's, what they've termed and developed in their papers, as the forfeiture/waiver argument. This case has a long history. My predecessors spent a lot of time reviewing these motions.
>
> * * * *
>
> I do think that Mr. Childress had an opportunity to appeal from any discovery rulings that he found to be erroneous or that overlooked his claims and his failure to perfect that appeal is what prevented him from seeking a review and I think a proper review of those claims would have been by the Sixth Circuit in its comprehensive review of the case rather than me diving back in.

Transcript, R.558, PageID.17183-17184; Order, R.557, PageID.17145-17146. Judge Leitman denied Childress' second, mid-trial motion the same way:

> Now, I have previously ruled that given this history before Judge Battani, and perhaps other parts of the record that I haven't mentioned today, I've previously ruled and I continue to believe that Mr. Childress, in the action before me, has either forfeited or waived his right to make further challenges to Dassault's assertion of privileges, because after Judge Battani made these rulings on privilege, Mr. Childress took an appeal, with counsel, and did not raise any challenges to any of the privilege rulings.
>
> And in my view, under the rule announced in *JGR, Incorporated v. Thomasville Furniture,* 550 F.3d 529, at page 532, a published Sixth Circuit decision from 2008, not appealing that amounts to either a waiver or a forfeiture.

Transcript, R.725, PageID.28874-28875. Judge Leitman properly assessed and rejected Childress' argument—which Childress also asserts in this appeal—that Clarkson's trial testimony indicating that he had not sought "legal advice" from Pantanacce was "new evidence" that should change the calculus on whether the Pantanacce/Clarkson communications were privileged:

> So the question I'm asking myself is, did Mr. Clarkson's testimony introduce some new fact that necessarily changes something and compels me to revisit Judge Battani's ruling, that I think is now baked into this case by virtue of the non-appeal and the mandate and remand from the Sixth Circuit, and in my view of that is no.
>
> First, the nature of Clarkson's connection to Dassault during the relevant time periods, first, in his employment with IBM; second, as his own company; and, third, as a

> Dassault employee, all of that was known during discovery and, indeed, was mentioned in Mr. Childress's motions.
>
> Second, the vast majority of the communications between Pantanacce and Clarkson were withheld under both the attorney-client and the work product privileges, and there's not even an argument before me today that anything that happened so far in trial, impacts the work product assertion.
>
> And finally, the question is, is there something about Clarkson's testimony that necessarily means that the assertion of the privilege – the attorney-client privilege was invalid or that Clarkson's communications between Pantanacce were necessarily not covered by the attorney-client privilege? And I don't think there is.

*Id.*, PageID.28875-28876.

Judge Leitman did not abuse his discretion by following the law-of-the-case. Childress does not suggest Judge Leitman relied on erroneous findings of fact, applied the wrong legal standard or misapplied the correct legal standard, or made a clear error of judgment – which is required for this Court to review Judge Leitman's opinion under the "abuse of discretion" standard. *Corbin v. Steak 'n Shake, Inc.*, 2021 U.S. App. LEXIS 20440, *9-10 (6th Cir. July 8, 2021). Childress superficially claims that Judge Leitman's waiver finding "cannot be reconciled with this Court's finding in *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018)." But *Luna* merely reiterates this Court's jurisprudence that an "order granting [a] new trial has the effect of vacating the former judgment, and render[ing] it null and void, and the

parties are left in the same situation as if no trial had ever taken place in the cause." *Id.*, at 297. *Luna* does not even mention the waiver, forfeiture or law-of-the-case doctrines or their application to an un-appealed discovery order. There is simply no colorable argument that Judge Leitman abused his discretion in applying the waiver/forfeiture and law-of-the-case doctrines.

#### 4. Childress Does Not Attempt to Demonstrate Any Error in Judge Battani's 2015 Order

Aside from failing to demonstrate Judge Leitman abused his discretion in declining to revisit Judge Battani's 2015 Order, Childress does not even attempt to explain why Judge Battani's 2015 Order was wrong in the first place. Childress points out the well-known principle that the attorney-client privilege cannot be used as both a sword and a shield, but Childress does not point to a single instance where Dassault actually used privileged documents as a sword. In fact, there was none. Childress also fails to address the fact that both Judge Battani and Judge Leitman recognized that most of the sought-after documents were deemed privileged under *both* the attorney-client privilege and the work product doctrine, and Childress only challenges the attorney-client privilege. Transcript, R725, PageID.28872; Transcript, R.295, PageID.8160, citing *United States v. Roxbury*, 457 F.3d 590, 593 (6th Cir. 2006).

### B. <u>Issue #2</u>: (1) Childress and His Attorney Waived the Right to Appeal the Admission of Pennisi's and Taube's Testimony; and/or (2) Childress' Attorney Forfeited the Right to Appeal and Childress Has Not Demonstrated a Plain Error

#### 1. Childress' Attorney Waived Any Challenge to Pennisi's Testimony Concerning Childress' October 30, 2006 Interview and Childress' December 14, 2006 Proffer Interview

A party waives an argument by intentionally abandoning it. *Ky. Indus. Hemp,* 2024 U.S. App.LEXIS 13846, at *6, citing *Bannister*, 49 F.4th at 1011. A litigant can waive an argument by explicitly agreeing with the district court's proposed course of conduct. *Id.*, at *10, citing *United States v. Carter*, 89 F.4th 565, 568-69 (6th Cir. 2023). Childress' attorney did just that.

Childress' attorney expressly and unequivocally <u>waived</u> any objection to Pennisi's and Taube's testimonies during the 2024 trial. Prior to the start of Pennisi's testimony concerning the October 30, 2006 interview, Dassault sought to admit Exhibit P25A—which was Pennisi's FBI 302 Report summarizing Childress' October 30, 2006 interview. Transcript, R.724, PageID.28760. Childress objected to the admission of the FBI 302 Report. *Id*. Notably, though, Childress did *not* object to Pennisi *testifying* about the topics in the FBI 302 Report. *Id.* After Judge Leitman and the parties' respective counsel had an extended discussion, <u>Childress' attorney expressly and unequivocally stated that he had **no objection**</u> to Pennisi *testifying* about the topics in the FBI 302 Report or to Dassault's use of the FBI 302 Report to

refresh Pennisi's recollection during his testimony, provided the FBI 302 Report itself was not admitted into evidence:

> **The Court:** Mr. Bendure, if we proceeded where it [the FBI 302 Reports] doesn't come in as an exhibit, Pennisi's called as a witness, they ask him the question, do you recall whether Childress made any incriminating statements or anything – whatever, they ask him a question, and he says I don't remember, do you have an objection to them using this [the FBI 302 Report] to refresh his recollection?
>
> **Mr. Bendure:** No.

Transcript, R.724, PageID.28766-28767 (emphasis added); See also, *Id.*, PageID.28841, lines 17-24.

Similarly, Childress' attorney insisted that Special Agent Taube's entire *de benne esse* deposition – including a reading of Pennisi's FBI 302 Report – be played for the jury over Judge Leitman's caution that doing so would effectively be admitting the FBI 302 Report into evidence:

> **The Court:** If you [Bendure] stand by your insistence of playing the entire video, then 25A is coming in, but I want that to happen with all of our eyes open. 25A is effectively coming in, because it is being read into the record, and if that happens, it should happen with all of our eyes open, so that nobody later looks back and say, hold on, what happened here was Bendure objected to 25A, there was a path charted that included 25A not coming in, and that path was obliterated when the video was played and 25A was read into the record.
>
> My view is the video is only being played in its entirety, including the parts reading 25A, because you have insisted

> on it. I don't mean to be critical of that. But if you are going to stand by that insistence, the consequences [sic] is that 25A, the substance of it, comes in.
>
> **Mr. Bendure:** I guess my position is, still, I have no objection to him reading from it in light of the later admission that he doesn't remember much and he's just going by the paperwork, but I don't think the physical exhibit ought to go in the jury room.
>
> **The Court:** So what's not going to happen is that later on, somebody from the Childress side is going to say, hold on, there's a reversible error here in that the contents of 25A was read into the record verbatim, and Childress previously objected to the admission of 25A. You are saying now that you are satisfied 25A, the physical copy, doesn't come in, but Taube reading it in his deposition, that's a reasonable compromise for you, because it allows you to get your part of this video in and whatever other goals you have. Is that fair?
>
> **Mr. Bendure:** Yes, Your Honor.
>
> **The Court:** That's fair?
>
> **Mr. Bendure:** Yes.

*Id.*, PageID28843-28844 (emphases added). There is no doubt that Childress' attorney expressly stipulated to the admission of the contents of Pennisi's October 31, 2006 FBI 302 Report.

The consequence of Childress' waiver is that this Court "will not consider the waived argument on appeal, regardless of any unique circumstance." *Ky. Indus. Hemp,* U.S. App.LEXIS 13846, at *6, citing *Bannister*, 49 F.4th at 1012 (collecting

cases). Therefore, Childress' attorney's waiver should end the review of this issue here.

### 2. Childress Also Waived Any Challenge to the Admissibility of Pennisi's and Taube's Testimonies By Not Appealing Admissibility of the Same Testimony After the 2017 Trial

A party who fails to appeal an issue waives his right to raise that issue before this Court in a subsequent appeal. *Sedore*, 512 F.3d at 827; *JGR*, 550 F.3d at 532; *Johnson*, 2025 U.S. App. LEXIS 8615, at *14. Here, Childress seeks to raise the same issue that was ripe for appeal following the 2017 trial.

Pennisi gave the same testimony in the 2017 trial as he gave in the 2024 trial. Compare Transcript, R.474, PageID.14487-PageID.14508 to Transcript, R.724, PageID.28744-PageID.28793. Childress did not object to Pennisi's testimony during the 2017 trial. Transcript, R.474, PageID.14487-PageID.14508. In fact, in the 2017 trial, Childress stipulated to the admission of the FBI 302 Reports themselves. *Id.*, PageID.14491 ("No objection" to Exh. 25, October 31, 2006 FBI 302 Report); *Id.*, PageID.14501-14503 (Childress stipulated to Exh. 114, FBI 302 Report re December 14, 2006 interview). Consequently, the admission of Pennisi's testimony was ripe for Childress' last appeal following the 2017 trial. But Childress did not appeal Judge Battani's admission of Pennisi's testimony. *Dassault,* 828 Fed.Appx. 229. Therefore, this is a second way Childress waived any subsequent challenge to

the admission of Pennisi's testimony, and a second reason why this Court's inquiry on this issue should end here.

#### 3. Childress Forfeited Any Challenge to Admissibility of Pennisi's and Taube's Testimonies By Not Objecting at the 2024 Trial and Childress Has Not Demonstrated a Plain Error

Aside from Childress' multiple outright waivers, Childress also forfeited his challenge to the admission of Pennisi's and Taube's testimonies by not lodging an objection to preserve the issue for appeal.

A party is required to preserve a claim of error with respect to a ruling to admit evidence at trial by making a timely objection. Fed. R. Ev. 103(a)(1). If a party fails to object to the admission of evidence at trial, this Court reviews the admission of that evidence under the "plain error" standard. *United States v. Xiaorong You*, 74 F.4th 378, 388 (6th Cir. 2023), citing *United States v. Collins*, 799 F.3d 554, 574 (6th Cir. 2015). Under the "plain error" review, this Court may correct the claimed mistake only if the Appellant shows (1) an error; (2) that was clear or obvious; (3) that affected the Appellant's substantial rights; and (4) that affected the fairness, integrity, or public reputation of the proceedings. *Xiaorong You*, 74 F.4th at 388, citing *United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997).

Childress did not object to the admission of Pennisi's and Taube's testimonies. Yet, Childress has not even attempted to offer a rigorous "plain error" analysis. Nor could he. Judge Leitman's admission of Pennisi's and Taube's

testimonies was consistent with what Judge Zatoff, Judge Battani, and this Court had already repeatedly opined: Rule 6(e) does not apply to Pennisi's FBI 302 Reports. See, e.g., R.463, PageID.13196-13197 (Judge Battani opining that Pennisi's testimony and his FBI 302 Report were not "matters occurring before the grand jury" because Childress' interviews were voluntary, not coerced); R.113, PageID.1514 (Judge Zatkoff opining that "Rule 6(e) does *not* bar disclosure" of Pennisi's FBI 302 Report); *Dassault*, Case No. 13-2414, p. 2 (R.277) (The Sixth Circuit affirming Judge Zatkoff's opinion because Childress' October 30, 2006 interview occurred well before the grand jury convened and the interview was independent of grand jury proceedings.) The evidence supports these prior decisions for any one of the following reasons:

(i) The October 30, 2006 and December 14, 2006 interviews were not obtained by "coercive means," as Childress voluntarily gave both interviews R.724, PageID.28781, lines 6-12; R.724, PageID.28786; See, *In Re Grand Jury Matter*, 682 F.2d 61, 64 (3rd Cir. 1982) (FBI 302 reports concerning FBI's investigation and information not obtained through coercive means not subject to Rule 6(e)); and/or

(ii) Rule 6(e) does not apply to Pennisi, who is an FBI agent and not one of the enumerated categories of persons subject to Rule 6(e); and/or

(iii) there is no evidence that anything involving Childress occurred before a grand jury. R.295, PageID.8162. Neither Pennisi nor Childress testified before any

grand jury in Childress' case. Transcript, R.724, PageID.28755; Transcript, R.295, PageID.8161-8162.

### 4. The Law-of-the-Case Pursuant to This Court's 2014 Opinion Is That Pennisi's Testimony Is Not Precluded by Rule 6(e)

In 2012, Judge Zatkoff denied Childress' motion to quash Dassault's subpoena to the FBI seeking production of documents concerning the FBI's investigation of Childress. R.113, PageID.1514 ("The Court finds that Rule 6(e) does *not* bar disclosure [of the FBI's notes and information concerning any interview with Childress]"). Childress appealed Judge Zatkoff's Order, and, because by that time the FBI had already produced the FBI 302 Report to Dassault in the ordinary course of discovery, Childress asked this Court to "order the suppression of all evidence that is the fruit of breaches of grand jury secrecy, including, but not limited to … [a]ny and all reports that relate in any way to the grand jury investigation of me and my family's school." *Dassault*, Case No. 13-2414, Doc. 27-1, p.8. This Court denied Childress' request to suppress Pennisi's FBI 302 Report and affirmed Judge Zatkoff's Order, finding Rule 6(e) does not apply to Pennisi's FBI 302 Reports. *Id.*, Doc. 33-1, p.2 (6th Cir. Dec. 4, 2014) (Opinion, R.628-2, ECF24094-24096).

Therefore, the law-of-the-case is that admission of Pennisi's FBI 302 Report (and related testimony) is not precluded by Rule 6(e). This Court should not re-consider its own prior Opinion absent "exceptional circumstances," which Childress

has not shown. *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425-426 (6th Cir. 2017).

### 5. The Government's Privilege Log Does Not Save Childress' Argument

Childress' reliance on the Government's 2016 Privilege Log ("Privilege Log") as the purported linchpin for this Court to find error in Judge Leitman's admission of Pennisi's and Taube's testimonies fails for several reasons. First, whatever is inferable from the Privilege Log, it cannot undo Childress' multiple waivers and his forfeiture of any challenge to the admissibility of Pennisi's and Taube's testimonies, both by failing to appeal the issue following the 2017 trial and by expressly agreeing to Pennisi's and Taube's testimonies in the 2024 trial. Second, the Privilege Log was produced to Childress in 2016, <u>before</u> the 2017 trial and the 2024 trial, as well as the last appeal, so it is not "new evidence." Childress was free to rely upon it to make his argument at any time, and, in fact, he did so in a motion in limine before the 2024 trial (Childress' Motion *in limine,* R.623, PageID.23485), which Judge Leitman rejected. Transcript, R.713, PageID.27052, citing Dassault's Brief, R.628, PageID.24082. Third, Childress' proposed inference that a grand jury *must have* been convened due to its identification of Rule 6(e) as the basis for listing two documents on the Privilege Log is unsupported because it ignores the fact that the Government <u>produced</u> – and did <u>not</u> claim Rule 6(e) protection for – hundreds of pages of other documents, <u>including Pennisi's FBI 302 Reports summarizing</u>

Childress' October 30, 2006 and December 14, 2006 interviews. Government Privilege Log, R.453-6, PageID.12660-12663. Finally, the Privilege Log does nothing to address the fact that Childress' interviews were not coerced, and that Rule 6(e) does not apply to Pennisi in the first place.

**6. Any Possible Error Was Harmless**

Any possible error in admitting Pennisi's and Taube's testimonies (there was none) was harmless because other substantial evidence demonstrated Childress was liable for copyright infringement. First and foremost, Childress himself admitted he cloned his one CATIA license to 17 computers he used in his classes. Transcript, R.725, PageID.28923. Second, Dimitrelos explained that, based on his forensic analysis of Childress' computers, Childress had cloned the one CATIA license to 17 other computers. *Id.*, PageID.28924. That fundamental fact was never in dispute, with or without the testimonies of Pennisi and Taube. Childress' primary defense was that he had an implied license from MSC Software, indirectly through MSC's technical support employee Nathan Haller, to use the one legitimate CATIA license on all of Childress' computers. But Haller unequivocally debunked that defense at the 2024 trial, denying that he ever gave Childress authorization to install his one license key onto his training computers in his classroom and acknowledging he was not authorized to do so in any event. Transcript, R.704, PageID.26377; See also, *Id.*, PageID.26380, lines 20-23.

Because other substantial evidence aside from Pennisi's and Taube's testimonies supported the jury's verdict of copyright infringement, any possible error in admitting their testimonies was harmless, precluding a reversal. *United States v. Fugate*, 2000 U.S. App. LEXIS 22654, *2 (6th Cir. August 30, 2000); See also, *United States v. Logan*, 542 Fed. Appx. 484, (6th Cir. 2013).

### C. Issue #3: (1) Childress Waived His Challenge to Dimitrelos' "Crack" Testimony for "Reliability"; and/or (2) Childress Forfeited the Right to Appeal and Has Not Demonstrated a Plain Error

#### 1. Childress Waived His Challenge to Dimitrelos' "Crack" Testimony on the Basis of "Reliability" By Not Appealing Admissibility of the Same Testimony Following the 2017 Trial

Dimitrelos offered the same "crack" testimony in the 2024 trial that he did in the 2017 trial. Compare, Transcript, R.473, PageID.14307-14314 (2017 trial) with Transcript, R.725, PageID.28912-28918 (2024 trial). Childress admits as much. Appellant's Brief, Doc. 11, p. 55. Childress did not challenge Judge Battani's admission of Dimitrelos' "crack" testimony in his appeal following the 2017 trial on any basis, let alone the "reliability" challenge he offers now in this appeal (but which he did not present during the 2017 trial). *Dassault*, 828 Fed.Appx. 229. Therefore, Childress waived his right to challenge admissibility of Dimitrelos' "crack" testimony here. The consequence of Childress' waiver is that this Court "will not consider the waived argument on appeal, regardless of any unique circumstance."

*Ky. Indus. Hemp,* U.S. App.LEXIS 13846, at *6, citing *Bannister*, 49 F.4th at 1012 (collecting cases). This Court's review of this issue should end here.

### 2. Childress Forfeited His "Reliability" Argument Concerning Dimitrelos' "Crack" Testimony

#### a. Childress Did Not Object to Dimitrelos' Testimony at the 2024 Trial

Childress also forfeited his "reliability" challenge at the 2024 trial by failing to make a timely objection. Fed. R. Ev. 103(a)(1). When Dassault moved to qualify Dimitrelos as a Rule 702 expert of computer forensics, Childress' attorney expressly stated "no objection." Transcript, R.725, PageID.28892. Thereafter, Childress' attorney did not lodge a single objection throughout Dimitrelos' testimony, including when Dimitrelos testified that he had found a "crack" on Childress' computer. Transcript, R.725, PageID.28913-28917. Therefore, Childress failed to preserve this issue for appeal.

#### b. Childress Did Not Preserve His Objection Via His Pre-Trial Motion *In Limine*

In tacit acknowledgement that he did not preserve his objection to Dimitrelos' "crack" testimony during the 2024 trial, Childress suggests he preserved the issue through his pre-trial motion *in limine*. Doc. 11, p.64. But merely filing a motion *in limine* to exclude evidence does not preserve the issue for appeal unless counsel also objects to the evidence at the time that it was introduced at trial. *United States v.*

*Calhoun*, 480 Fed. Appx. 353, 357 (6th Cir. 2012), citing *United States v. Kelly*, 204 F.3d 652, 655 (6th Cir. 2000). Childress' argument fails for at least this reason.

Additionally, Childress' suggestion (Doc. 11, p.64) that he challenged the "reliability" of Dimitrelos' "crack" testimony in his motion *in limine* is a ruse. In fact, Childress never challenged the "reliability" of Dimitrelos' "crack" testimony, whether in his motion *in limine* (Childress' motion *in limine,* R.622, PageID.23287-23290) or otherwise. Childress' only challenge to Dimitrelos' "crack" testimony was that Dassault failed to disclose it in a timely manner, which Judge Leitman rejected. *Id.*; Transcript, R.713, PageID.27051.

Attempting to bolster his misrepresentation, Childress mis-attributes Judge Leitman's reasoning for denying Childress' challenge to Dimitrelos' *qualifications* to opine on Childress' *cloning activities* (not the reliability of Dimitrelos' "crack" testimony), which was presented as separate and distinct reasoning in Judge Leitman's Order. Specifically, referring to Dimitrelos' "crack" testimony, Childress falsely asserts "[t]he district court denied Childress's motion without making findings regarding the reliability of Dimitrelos's expert testimony, stating instead that the issue was 'a fair subject for cross-examination.'" Appellant's Brief, Doc. 11, p.64. But Judge Leitman did not opine on the "reliability" of Dimitrelos' "crack" testimony because Childress did not challenge Dimitrelos' testimony on the "reliability" of his methodology.

Further, Childress' representation that Judge Leitman commented that "the issue was 'a fair subject for cross-examination'" is a misrepresentation because "the issue" Judge Leitman identified as "a fair subject for cross-examination" was directed to Childress' challenge to Dimitrelos' qualifications as a CATIA and LUM expert in order to testify on computer forensics issues:

> And the issue of his [Dimitrelos'] statement about licensing and the excerpt in Mr. Bendure's papers, I think, is an appropriate subject for cross-examination. I don't take it that he's acknowledging that he lacks an expertise in the particular license concept that he opined about. I think it's a reasonable reading that he was saying that he didn't understand the business side of licensing, but that's a fair subject for cross-examination.

Transcript, R.713, PageID.27051-27052 (emphasis added). Judge Leitman's reference to "a fair subject for cross-examination" was divorced from Childress' challenge to Dimitrelos' "crack" testimony, which Childress challenged only for purported untimely disclosure.

*Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745 (6th Cir. 2005) is on all fours with the present case. In *Barner*, the Appellant had objected to the exclusion of evidence on one basis at trial but then argued the same evidence should have been excluded on a *different* basis during the appeal. The Sixth Circuit found the Appellant waived its argument on the second basis on appeal. *Id.*, at 750. ("Our function is 'to review the case presented to the district court, rather than a better case fashioned after a district court's unfavorable order. For that reason, 'it is well settled

law that this court will not consider an error or issue which could have been raised below but was not.'") (citations omitted). See also, *Armstrong v. City of Melvindale*, 432 F.3d 695, 699-700 (6th Cir. 2006) ("Although both parties briefed *this* court on the issue, the failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.").

Childress did not preserve his challenge to Dimitrelos' "crack" testimony for appeal, whether at trial or through his motion *in limine*.

### c. Childress Has Not Demonstrated Admission of Dimitrelos' "Crack" Testimony Was a Plain Error

Childress has not demonstrated that Judge Leitman's admission of Dimitrelos' testimony was a "plain error," nor has he offered the requisite analysis under the "plain error" standard. Appellant's Brief, Doc. 11, pp.61-66; See, *Xiaorong You*, 74 F.4th at 388.

Even if the Court were to consider the argument Childress now advances for excluding Dimitrelos' "crack" testimony – that Dimitrelos did not consider "contrary evidence" when arriving at his conclusion – it is completely meritless. Childress confuses credibility (i.e., the weight of the evidence) with reliability (i.e., admissibility). Childress contends the purported "contrary evidence" is the *absence* of any disclosure by Dimitrelos in his Rule 26 expert report of November 7, 2013 and his own deposition testimony of August 21, 2015. Doc. 11, pp.61-62. This is not an attack on Dimitrelos' ***methodology*** at all. Indeed, Childress has never suggested—

in his motion *in limine* or even here on appeal—that the forensic imaging and analysis Dimitrelos performed on Childress' computers was unscientific or the product of an unreliable *methodology*. Nor could he. Dimitrelos showed the jury in real time that a cracked "js0group.dll" file resided on the hard drive of Childress' computer in the CATIA directory. Transcript, R.725, PageID.28912-28916. The "cracked" js0group.dll file replaced an original/authentic file, which was renamed so that the original/authentic file would not execute. *Id*. Instead of going to the reliability of Dimitrelos' *methodology*, Childress' arguments go to the *credibility* of Dimitrelos' opinions and testimony, which was the jury's job to evaluate. Judge Leitman would have been wrong to exclude Dimitrelos' testimony based on Childress' credibility attacks that essentially question why Dimitrelos didn't find the "crack" earlier in his analysis of Childress' computers.

#### d. Any Error Was Harmless Because Childress Admitted He Used a Cracked Copy of CATIA and Haller and Pennisi Corroborated Childress' Admission

Even if it *were* erroneous to admit Dimitrelos' "crack" testimony (it was not), any such error was harmless. Dimitrelos' "crack" testimony simply conveyed that he found through his forensic investigation of Childress' computer a file called "js0group.dll" that had been altered from its original version, which constituted a "crack" that enabled CATIA to be run without a proper license key. Transcript,

R.725, PageID.28913, line 20 – PageID.28915, line 11. This is a fact that Childress himself <u>admitted</u> at trial, and which was corroborated by Haller and Pennisi.

Specifically, Childress admitted at trial that he obtained a cracked copy of CATIA for $50 from Lithuania and that he had discussed his purchase of the cracked copy of CATIA with Haller:

> **Q:** Even though the one and only license to CATIA V5 that you ever purchased was in November of 2011, you had been using CATIA V5 regularly, for a long time before that; isn't that true?
>
> **A:** Before the purchase, yes, I had, uh-huh.
>
> **Q:** Going back all the way to February of 2000, right? So almost two years --
>
> **A:** Correct.
>
> **Q:** -- before you bought a license, true?
>
> **A:** Correct.
>
> **Q:** And the way you were doing that was because you had bought a crack copy of CATIA for $50, from Lithuania, true?
>
> **A:** I purchased something for $50, and what arrived had stamps from all over the world. One of the stamps was Lithuania, and it turned out to be the CATIA V5 software.
>
> * * * *
>
> **Q:** And so you loaded it up and you installed the crack file, true?

> **A:** I followed the directions that it said. I don't know that it said, crack file, but I followed the directions that it gave.
>
> **Q:** And you were able to run CATIA completely without purchasing a license, true?
>
> **A:** I was able to open CATIA, yes.
>
> * * * *
>
> **Q:** So you had talked to Nathan Haller in the fall of 2000, when he came out to install the 30-day try-and-buy – or temporary license at your place, and from that conversation, he knew that you had a crack copy of CATIA already, true?
>
> **A:** When he came out, we discussed the Lithuania thing, yes.

Transcript, R.725, PageID.28969-28971. Nathan Haller confirmed that Childress had admitted to him that he had used a cracked copy of CATIA. *Id.*, PageID.29044, lines 5-10. Pennisi also testified that Childress confessed to purchasing and using an unlicensed (cracked) copy of CATIA for $50 from Lithuania during his October 30, 2006 and December 14, 2006 interviews. Transcript, R.724, PageID.28776, lines 5-9; *Id.*, PageID.28784, lines 10-15; *Id.*, PageID.28785, lines 5-11.

Therefore, any possible error in admitting Dimetrelos' "crack" testimony (there was none) was harmless because it was cumulative of other substantial evidence, precluding Childress' request for a reversal. *United States v. Fugate*, 2000 U.S. App. LEXIS 22654, *2 (6th Cir. August 30, 2000); See also, *United States v. Logan*, 542 Fed. Appx. 484, (6th Cir. 2013).

### D. <u>Issue #4</u>: The District Court's Initial Interest Confusion Jury Instruction Was Not a Plain Error

#### 1. Standard of Review

When a party does not object to the district court's jury instruction, this Court reviews the accuracy of such instruction for plain error. *Munson Hardisty, LLC v. Legacy Point Apts.*, LLC, 2025 U.S. App.LEXIS 7341, *5 (6th Cir. March 28, 2025); See also, *United States v. Aaron*, 590 F.3d 405, 408 (6th Cir. 2009). To demonstrate plain error, the proponent must establish four elements: "(1) that there was an error; (2) that the error was plain; (3) that the error affected a substantial right; and (4) that the error "seriously affected the fairness integrity, or public reputation of the judicial proceedings." *Munson*, 2025 U.S. App.LEXIS 7341, at *5.

#### 2. Judge Leitman's Adoption of The Initial Interest Instruction Was Not Plain Error

Because Childress' attorney did not object to the Initial Interest Instruction, this Court reviews Childress' challenge to it now under the "plain error" standard. *Munson*, 2025 U.S. App.LEXIS 7341, at *5.

Childress does not assert the district court's Initial Interest Confusion instruction was an incorrect statement of the law. Nor could he. See, *Paccar Incorporated v. Telescan Technologies,* 319 F.3d 243, 253 (6th Cir. 2003). Instead, Childress argues that it was wrong to give an initial interest confusion instruction at all in the 2024 trial because, according to Childress, this Court made a "legal determination [in its 2020 Opinion that] foreclosed relitigation of initial-interest-

confusion as a viable trademark theory." Doc. 11, p. 60. In essence, Childress argues that this Court made a conclusion of law that under no circumstances could Dassault succeed on an initial interest confusion theory for trademark infringement. Childress' interpretation of this Court's 2020 Opinion is fundamentally wrong.

Childress confuses the role of appellate courts. Childress asserts that "this Court has already held that … www.practicalcatia.com was unlikely to cause confusion." Childress' Doc. 11, p. 59. But this Court never made such a conclusion from a factual or legal standpoint. The Sixth Circuit is not the finder of fact. This Court only can determine if the district court's orders or verdicts are defective. In its 2020 Opinion, this Court assessed whether Judge Battani had erred in her Order denying Dassault's post-trial Fed. R. Civ. P. 50(b) motion by failing to consider Dassault's initial interest confusion theory. *Dassault*, 828 Fed.Appx. at 250. This Court found that Judge Battani's Order was appropriate because "the record supported a jury finding that www.practicalcatia.com was unlikely to cause confusion." *Id.*, at 251. The "record" to which this Court referred in its 2020 Opinion was the record from the 2017 trial – which is not identical to the record now on appeal from the 2024 trial. In its 2020 Opinion, this Court reasoned that it could not say that "no reasonable jury" could find non-infringement (the Rule 50(b) standard) because Childress' www.practicalcatia.com website included "indicators that clarify it is not affiliated with Dassault." *Id.,* at 250-251. But this Court did not find the

opposite, i.e., that, as a matter of law, no reasonable jury could find that Childress' domain name infringed the CATIA mark by creating initial interest confusion with Dassault. Indeed, that question was not even before this Court. In other words, though this Court's 2020 Opinion found that there was evidence to support a reasonable jury's finding of no initial interest confusion, the Opinion did <u>not</u> find that the evidence *precluded* a reasonable jury from finding trademark infringement based on the initial interest confusion theory.

Childress attempts to confuse the issue by repeatedly pointing to Judge Leitman's recognition that the Sixth Circuit's 2020 Opinion is "what I have to follow" (Appellant's Brief, Doc. 11, p.69), conflating Childress' argument on appeal with an objection that *Dassault* had lodged. Dassault had contended that the Initial Interest Confusion Instruction should have included an *additional* sentence that "A disclaimer disavowing affiliation with a trademark owner read by a consumer after reaching the website comes too late to prevent initial interest confusion," relying on *Paccar,* 319 F.3d at 253; Transcript, R.716, at PageID.27511-27512. Judge Leitman recognized that the additional directive Dassault proposed is black letter law: "The instruction that you propose comes almost verbatim from the *Paccar* case. It's blackletter law; as a published decision of the Sixth Circuit, I'm bound to follow that." *Id*. However, Judge Leitman went on to point out that this Court suggested in its 2020 opinion in this case that a jury *could potentially* find that disclaimers on a

website might dissipate confusion: "Dassault fails to explain why, assuming that such initial confusion were to take place, it would not be instantly dissipated without any harm once the consumer clicks the www.practicalcatia.com link and enters the website, a website with numerous indicators that clarify it is not affiliated with Dassault." *Id.*, PageID.27514, quoting *Dassault*, 828 Fed.Appx. at 250-251. Judge Leitman acknowledged it was "very difficult to reconcile" this Court's statement in its 2020 opinion suggesting that disclaimers *could* dissipate confusion with this Court's statement in *Paccar* that "[a] disclaimer disavowing affiliation with a trademark owner read by a consumer after reaching the website comes too late to prevent initial interest confusion." *Id*. Judge Leitman overruled Dassault's objection, and, applying the law-of-the-case doctrine, declined to include the directive from *Paccar* because Judge Leitman found this Court had previously opined that "initial interest could be dissipated in this very case by a disclaimer," notwithstanding the holding in *Paccar*. *Id.* Consequently, the final Initial Interest Jury Instruction was the originally-proposed Initial Interest Jury Instruction to which Childress' attorney had no objection.

**3. Any Possible Error Was Harmless**

Under the applicable "plain error" standard, this Court can only reverse the jury's verdict of trademark infringement if the error "is so 'obvious and prejudicial' that we are required to act 'in the interests of justice.'" *House v. Player's Dugout,*

*Inc.,* Case No. 22-5843, 2024 U.S. App. LEXIS 3181 at * 36 (6th Cir. February 8, 2024); *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1075-76 (6th Cir. 2015); *Armstrong v. Shirvell*, 596 F. App'x 433, 451 (6th Cir. 2015)). Here, Childress would need to show that the jury would not have found him liable but-for the erroneous instruction. *Alsobrook v. UPS Ground Freight, Inc.*, 352 Fed.Appx. 1, 3 (6th Cir. 2009) ("This is not a case with a clear indication that the jury's verdict was related to the challenged instruction… The present appellants' 'case is not so strong that we can say that it had not been for an erroneous instruction [they] would surely have prevailed at trial.'").

Childress offers no basis to vacate the jury verdict because Childress has not established the jury would have found him not liable but-for the Initial Interest Confusion Instruction. The jury's trademark infringement finding and the verdict form were agnostic as to the theory of infringement. As Childress admits, "[t]he verdict form asked a single, general questions – whether 'Mr. Childress infringed Dassault's trademark rights' – and did not require the jury to identify the theory of confusion the jury found." Appellant's Brief, Doc. 11, p.60. Further, Dassault's counsel did not mention "initial interest confusion" at any time in the trial, including in his closing argument. Transcript, R.707, PageID.26831-26864. Therefore, not only can Childress not demonstrate that the Court's Initial Interest Confusion Instruction was "plain error," but also, with no theory-specific verdict, Childress

cannot demonstrate any misapplication of the Interest Confusion Instruction by the jury.

### E. <u>Issue #5</u>: The District Court's Jury Instructions Concerning Childress' Estoppel, Acquiescence, and Laches Defenses Were Not Plain Error

Childress challenges two aspects of the jury instructions and the flow of the verdict form used in the 2024 trial, and peripherally raises other issues, all of which Judge Leitman addressed in an extremely thorough, 54-page Order (Order, R.754, PageID.32946-PageID32999) denying multiple post-trial motions by Childress seeking a new trial and other remedies.[3]

#### 1. Standard of Review Concerning Jury Instructions

As indicated above, when a party does not object to the district court's jury instruction, this Court reviews the accuracy of such instruction for plain error. *Munson*, 2025 U.S. App.LEXIS 7341, at *5. To demonstrate plain error, the proponent must establish four elements: "(1) that there was an error; (2) that the error was plain; (3) that the error affected a substantial right; and (4) that the error "seriously affected the fairness integrity, or public reputation of the judicial proceedings." *Munson*, 2025 U.S. App.LEXIS 7341, at *5; *Aaron*, 590 F.3d at 408

[3] Judge Leitman also rejects Childress' contention that he was "excluded" from the process of crafting the jury instructions and verdict form. R. 754, PageID.32965-32969.

### 2. The Absence of an Estoppel Jury Instruction Was Not Plain Error

Childress' assertion that the absence of an estoppel jury instruction is reversible error is meritless because Childress' attorney abandoned any estoppel defense. Because Childress' attorney did not object to the lack of an estoppel instruction, this Court reviews this issue under the plain error standard. *Munson*, 2025 U.S. App.LEXIS 7341, at *5.

The word "estoppel" (or any derivative) was not mentioned a single time during the presentation of evidence or by Childress' attorney during his opening statement or closing argument. Transcript, R.707, PageID.26867-26894. Childress' attorney did not object to the jury instructions for lacking an estoppel instruction—before or after the jury charge—despite three separate invitations from Judge Leitman to do so. Transcript, R.716, PageID.27526, line 8—PageID.27556, line 9; Transcript, R.707, PageID.26865, lines 20-25; *Id.*, PageID.26922, line 20—PageID.26923, line 2. Childress' attorney did not raise the lack of an estoppel instruction as an error in any post-trial motions. Order, R.754, PageID.32986. The obvious—and only reasonable—inference is that Childress' attorney abandoned estoppel as a separate defense. Therefore, the absence of an estoppel jury instruction

was not a plain error. Applying the same plain error standard[4], Judge Leitman came to the same conclusion. Order, R.754, PageID.32985-PageID.32987.

This Court found there was no plain error on similar facts in *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1075-1076 (6th Cir. 2015). There, the district court's jury instruction for punitive damages in a Title VII case was admittedly wrong because it failed to instruct the jury on the third prong (good faith efforts) of a three-prong test for punitive damages. *Id.* The defendant did not object to the jury instruction at trial, so this Court reviewed the jury instruction for plain error. *Id.*, at 1075. This Court found that there was no plain error (even though the jury instruction was admittedly wrong) because the defendant "did not…even argue in its closing that it made good-faith efforts to comply with Title VII…Alleging 'prejudicial' error based on an affirmative defense not argued to the jury does not provide a basis for a Rule 51 plain-error reversal." *Id.*, at 1076, citing *Lee v. Metr. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 452 (6th Cir. 2011).

### 3. The Flow of the Jury Verdict Form Directed to Childress' Acquiescence and Laches Defenses Was Not a Plain Error

Judge Leitman also rejected Childress' argument that the flow of the jury verdict form (R.667, PageID.25047) instructing the jury to "skip" the questions addressing Childress' acquiescence and laches defenses if the jury found Childress'

[4] Judge Leitman described in detail the reason for applying the "plain error" standard in this situation. R.754, PageID.32962-32964.

use of the CATIA trademark to be "fair use" was erroneous. Order, R.754, PageID.32970-32985. This Court reviews challenges to the verdict form for plain error. *Munson*, 2025 U.S. App.LEXIS 7341, at *5; *Aaron*, 590 F.3d at 408.

Judge Leitman found the alleged error "did not affect [Childress'] 'substantial rights'" because acquiescence and laches are equitable defenses for the court to decide, not a jury, and thus Childress had no right to have the jury make the ultimate decision as to whether he should have prevailed on those defenses." Order, R.754, PageID.32980-32985. Judge Leitman is correct.

The verdict form accurately followed the jury instructions (to which Childress' attorney did not object), explaining that the jury need only consider the issue of damages if liability for trademark infringement was found (and no fair use). The questions concerning Childress' acquiescence and laches defenses appeared in the damages portion of the verdict form because, if found, acquiescence and laches operate to *limit the amount of awarded damages*. Transcript, R.707, pageID.26823, lines 17-21; *Id.,* PageID.26824, lines 10-14; Verdict Form, R.667, PageID.25047-PageID.25048. The portion of the verdict form related to trademark infringement looked like this:

(12) Do you find by a preponderance of evidence that Mr. Childress infringed Dassault's trademark rights in its CATIA mark?

YES ✓ NO ___

If you answer "YES" to question (12), then please proceed to next question;
If you answer "NO" to question (12), then go to question (19).

(13) Do you find by a preponderance of the evidence that Mr. Childress has established one or more of the following affirmative defenses:

a. Dassault's trademark claim is barred by the doctrine of "fair use"?

YES ✓ NO ___

b. Dassault's trademark claim is barred by the doctrine of unclean hands?

YES ___ NO ✓

If you answered "YES" to any of the sub-parts of question (13), then go to number (19);
If you answered "NO" to all subparts of question (13), go to the next question.

(14) what amount do you award in damages for the time period of 2000-2006 for trademark infringement?

$___________

(15) Do you find by a preponderance of the evidence that Mr. Childress has proven that Dassault's trademark infringement damages should be limited under the doctrine of laches?

YES ___ NO ___

(16) Do you find by a preponderance of the evidence that Mr. Childress has proven that Dassault's trademark infringement damages should be limited under the doctrine of acquiescence?

YES ___ NO ___

(17) If you answered yes to Question 16, what amount do you award in damages that occurred prior to acquiescence?

$___________

(18) Do you find by a preponderance of evidence that Mr. Childress' trademark infringement was willful?

YES ___ NO ___

R.667, PageID.25047. While there is no dispute that laches can only be used to limit the amount of damages awarded for past infringement (See, *Nartron Corp. v.*

*STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002)), some courts have held that acquiescence can potentially bar an entire trademark infringement cause of action, including injunctive relief. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

The jury found Childress infringed Dassault's CATIA trademark (R.667, PageID.25047, Question 12), but also found Childress had demonstrated his use of CATIA was "fair use" (*Id.*, Question 13). Consequently, the jury skipped the damages portion of the verdict form, which included questions on whether damages should be limited for acquiescence and laches. Later, Judge Leitman granted Dassault's Rule 50(b) motion for judgment as a matter of law that Childress' fair use defense does not apply where, as here, a defendant uses the plaintiff's mark as a trademark in the name of the defendant's for-profit business. Order, R.718, PageID.27597. Consequently, Childress' acquiescence and laches defenses became potentially relevant in view of Dassault's claim for damages. Dassault later waived its claim for damages (Order, R.754, PageID.32985), rendering Childress' laches defense moot and leaving only his acquiescence defense as potentially relevant.

While the acquiescence and laches jury instructions and the corresponding flow of the verdict form may have been unnecessary, it is irrelevant because both acquiescence and laches are equitable defenses, and, consequently, are for the judge to decide. *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d

313, 343 (8th Cir. 2018); *Bonner Farms, Ltd. V. Fritz*, 355 F.App'x 10, 18 (6th Cir. 2009); *Daycab C. v. Prairie Tech., LLC*, 67 F.4th 837, 856 (6th Cir. 2023). Because Dassault had waived its damages claim, only the acquiescence defense was potentially still in play. As Judge Leitman explained, Childress would have a full opportunity to present his acquiescence defense to the district court when Dassault moved for injunctive relief barring Childress' future use of the CATIA mark:

> Moreover, Childress still has an opportunity to present his acquiescence defense to the Court in full when Dassault moves for injunctive relief barring his use of the CATIA mark. At that time, the Court will consider the defense and determine whether the evidence presented at trial establishes the defense. Because Childress retains the ability to present his acquiescence defense to the Court – the proper decision-maker with respect to the defense – the claimed errors on the verdict form and jury instructions did not cause him unfair prejudice and do not entitle him to any relief.

Order, R.754, PageID.32980-32981. In fact, Childress presented his complete acquiescence defense to the Court in response to Dassault's motion for permanent injunctive relief. Childress' Opp. to Mot. For Perm. Inj., R.762, PageID.33203-33206. Judge Leitman thoroughly considered all the evidence—in far greater detail than presented by Childress—and, after a 26-page analysis, concluded that "Childress is not entitled to prevail on his acquiescence defense." Order, R.770, PageID.33394-33420. After a painstaking assessment of the evidence presented at the 2024 trial (*Id.,* PageID.33401-33420), Judge Leitman found that none of

Childress' interactions with IBM (Dassault's licensee), MSC Software (IBM's "business partner"), or Dassault itself supported Childress' acquiescence defense. *Id.* Childress does not challenge *that* Opinion by Judge Leitman on its merits.

Childress' argument that the jury should have resolved "factual disputes," even if the Court were to make the final decision on acquiescence, is also meritless. First, the flow of the verdict form did not cause any lack of factual findings because the verdict form did not ask the jury to make any underlying factual determinations; it simply asked the jury to make a final determination as to whether Childress had established his defense, a question ultimately reserved for the Court in any event. Verdict Form, R.667, PageID.25047; Order, R.754, PageID.32981-32982. Second, Childress has not identified a single genuine issue of material fact related to his acquiescence defense for which the jury would have properly been called-upon to resolve. See, Order, R.754, PageID.32982-32983. Finally, Judge Leitman found that "the key facts related to the acquiescence defense do not appear to have been meaningfully in dispute at trial." *Id.*, at PageID.32982. In other words, Judge Leitman assessed Childress' acquiescence defense in view of the facts as Childress presented them at trial without resolving any "factual disputes."

Because Childress was not entitled to have a jury make the ultimate determination on his acquiescence defense, and because there were no factual disputes for the jury to decide, and the verdict form question on acquiescence did

not seek resolution of any factual disputes in any event, Childress was not prejudiced by anything in the jury instructions and corresponding verdict form.

### 4. Childress' Other Arguments

Though not within the scope of Childress' framing of "Issue 5," Childress also suggests that he was prejudiced by Judge Leitman declining to answer a question posed by the jury during deliberations and a "compressed trial schedule." Appellant's Brief, Doc. 11, pp.77-79. Judge Leitman thoroughly addressed both points in his post-trial Order denying Childress' motion for a new trial. Order, R.754, PageID.32950-32962 (alleged compressed trial schedule); *Id.*, PageID.32989-32993 (jury question). In short, district courts have "considerable discretion" in responding to jury questions. *United States v. Phillips*, 872 F.3d 803, 807 (6th Cir. 2017). A district court does not abuse that discretion by declining to answer a jury's question on the evidence and instead directing the jury to rely on the evidence. *Ross v. Parrot's Landings, Inc.*, 2022 U.S. App.LEXIS 28588, *16 (6th Cir. October 13, 2022). Similarly, district courts have "broad discretion to place limits on the presentation of evidence to prevent delay, waste of time, and needless presentation of cumulative evidence" *Dassault,* 828 F. Appx. at 244. Here, Judge Leitman set a 15-hour time limit for each side to present its case. Order, R.754, PageID.32952. Childress' attorney rested Childress' case well *before* using all 15 hours, i.e., with more than 5 hours remaining on his 15-hour time limit. See, Childress' Mot. for

Reconsideration, R.732, PageID.29323 (Time Chart)). Childress' suggestion that he was prejudiced due to the district court's time limits is meritless. Finally, for the first time on appeal, Childress suggests that Judge Leitman did not give the jury access to admitted exhibits. Appellant's Brief, Doc. 11, pp.68-69. That is false. The jury was given access to binders of all admitted trial exhibits for use in deliberations. Order, R. 754, PageID.32991-32993; Transcript, R.707, PageID.26921-26922.

## IV. CONCLUSION

Dassault respectfully requests the Court to deny Childress' appeal in all respects and to affirm the Final Judgment (R.777, PageID.35030-35031).

Dated: August 20, 2026

Respectfully submitted,

/s/Glenn E. Forbis
Glenn E. Forbis (P52119)
J. Bradley Luchsinger (P76115)
Jeremiah J. Foley (P85516)

HARNESS, DICKEY & PIERCE, PLC
100 Bloomfield Hills Parkway, Suite 200
Bloomfield Hills, MI 48304
Phone: 248-641-1600
Fax: 248-641-0270
gforbis@harnessip.com
bluchsinger@harnessip.com
jfoley@harnessip.com

*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume Limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,960 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(f).

/s/Glenn E. Forbis
Glenn E. Forbis

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will be served by operation of the Court's electronic filing system upon all counsel of record and ECF participants. I further certify that a copy of the foregoing was served on the non-ECF participant via first class mail as follows:

Keith Childress
460 Patton School Rd.
S. Pittsburgh, TN 37380

/s/Glenn E. Forbis
Glenn E. Forbis

## V. ADDENDUM - APPENDIX OF RELEVANT ORIGINATING COURT DOCUMENTS

| Record | Description | Date | Range |
|---|---|---|---|
| 1 | Complaint | 2009-02-12 | 1 |
| 101-1 | Amended Answer to Complaint with Counterclaim | 2012-05-24 | 1249-1266 |
| 112 | Petition for an investigation into Rule 6(e)(2) breaches of grand jury secrecy | 2012-07-26 | 1501-1508 |
| 113 | Order Denying Motion to Quash | 2012-07-13 | 1514 |
| 250 | Childress Motion to Compel | 2014-07-16 | 5112-5128 |
| 256-4 | Privilege Log re Plaintiff Response to Motion to Compel | 2014-08-01 | 5199-5206 |
| 262 | Reply to Response to Emergency Motion to Compel | 2014-08-14 | 5277 |
| 277 | Opinion From Court of Appeals | 2014-12-04 | 2 |
| 295 | Transcript of Motion Hearing re Childress Motions to Compel held on 2015-07-01 | 2015-07-20 | 8158-8162 |
| 300 | Order: Motion to Compel (re: 250) | 2015-08-27 | 8247 |
| 453-6 | Exhibit E – Privilege Log to Motion for New Trial by Keith Childress | 2017-04-19 | 12660-12663 |
| 463 | Opinion and Order Denying Renewed Motion for Judgment as Matter of Law, Denying Motion for New Trial, and Denying Motion for Attorney Fees | 2017-07-14 | 13196-13197 |

| | | | |
|---|---|---|---|
| 473 | Transcript of Jury Trial held on 2017-03-09 | 2017-07-21 | 14307-14340 |
| 474 | Transcript of Jury Trial held on 2017-03-13 | 2017-07-21 | 14487-14508 |
| 550 | Childress Motion toCompel (post-remand) | 2021-04-19 | 16843-16849 |
| 557 | Order re Motion to Compel (re: 550) | 2021-10-26 | 17145-17146 |
| 558 | Transcript re Hearing on Childress Motion to Compel (re: 550) | 2021-10-29 | 17183-17184 |
| 597 | Judge Leitman Opinion and Order re Summary Judgment | 2023-03-02 | 22200 |
| 622 | Dassault's Motion in Limine No. 2 | 2024-01-16 | 23283-23290 |
| 623 | Dassault's Motion in Limine No. 3 | 2024-01-16 | 23485 |
| 628 | Dassault's Response to Motion in Limine No. 3 | 2024-01-26 | 24082 |
| 628-1 | Exhibit 1 to Response to Dassault's Motion in Limine No. 3 | 2024-01-26 | 24090-24093 |
| 628-2 | Exhibit 2 to Dassault's Response to Motion in Limine No. 3 | 2024-01-26 | 24094-24096 |
| 655 | Motion to Compel: Supplement | 2024-03-17 | 24810-24816 |
| 667 | Jury Verdict Form | 2024-03-26 | 25047-25048 |
| 704 | Transcript of Jury Trial held on 2024-03-19 | 2024-08-05 | 26377; 26380 |
| 707 | Transcript of Jury Trial held on 2024-03-22 | 2024-08-21 | 26720-26923 |
| 713 | Transcript of Motion Hearing/Final Pretrial Conference held on 2024-02-28 | 2024-11-19 | 27051-27052 |

| | | | |
|---|---|---|---|
| 714 | Transcript of Jury Trial held on 2024-03-13 | 2024-11-19 | 27195-27325 |
| 716 | Transcript of Jury Trial held on 2024-03-21 | 2024-11-19 | 27502-27556 |
| 718 | Order Terminating Defendant's Motions for New Trial and Granting Plaintiff's Motion for Judgment as a Matter of Law | 2024-11-21 | 27597 |
| 724 | Transcript of Jury Trial held on 2024-03-15 | 2024-12-21 | 28744-28846 |
| 725 | Transcript of Jury Trial held on 2024-03-18 | 2024-12-21 | 28871-29044 |
| 728 | Transcript of Motion Hearing held on 2024-11-21 | 2024-12-21 | 29174-29176 |
| 732 | Motion for Reconsideration | 2025-01-23 | 29323 |
| 754 | Order Denying Childress Motion for a New Trial, Motion for Evidentiary Hearing, Leave to Serve Subpoenas | 2025-07-17 | 32946-32999 |
| 762 | Response to Motion for Permanent Injunction | 2025-09-26 | 33203-33206 |
| 770 | Order Granting Plaintiff Motion for Permanent Injunction | 2026-02-06 | 33394-33420 |
| 777 | Final Judgment and Permanent Injunction | 2026-03-16 | 35030-35031 |